

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

```
IN RE                              )
                                   )
NEW LUXURY MOTORS, LLC,            )   CASE NO. 10-30835
NEW LUXURY IP, LLC,                )   CASE NO. 10-30836
LUXURY MOTORS LAS VEGAS, LLC,      )   CASE NO. 10-30837
NEW LUXURY MOTORS II, LLC,         )   CASE NO. 10-30838
BAY MOTORS, LLC,                   )   CASE NO. 10-30839
                                   )
     Debtors                       )   JOINTLY ADMINISTERED UNDER
                                   )   CASE NO. 10-30835-H3-11
                                   )
```

MEMORANDUM OPINION

The court heard the "Emergency Motion To Transfer Venue To The United States Bankruptcy Court For The Northern District Of Illinois" (Docket No. 30) filed by GMAC Inc. (GMAC). MB Financial Bank, N.A. (MB) filed a Motion to Transfer Venue (Docket No. 44) joining in GMAC's request. After review of the pleadings, response in opposition by the jointly administered Debtors (Docket No. 38), evidence and argument of counsel, the court makes the following Findings of Fact and Conclusions of Law denying the motion. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

Findings of Fact

Voluntary chapter 11 bankruptcy petitions were filed on February 1, 2010 by New Luxury Motors, LLC,(NLM), and the four

affiliates that it owns, New Luxury IP, LLC (IP), Luxury Motors Las Vegas, LLC (Las Vegas), New Luxury Motors II, LLC (NLM II), and Bay Motors, LLC (Bay Motors). Debtors were formed for the purchase and sale of high end luxury vehicles. IP owns the intellectual property used by Las Vegas, NLM II and Bay Motors to sell vehicles online. Las Vegas owns an auto dealership in Las Vegas, Nevada and NLM II owns an auto dealership in Chicago, Illinois. Bay Motors owns an auto dealership in Oakland, California and also sells vehicles under an Infiniti franchise.

GMAC is the largest secured creditor with a security interest in all of the personal assets of the three Debtors that operate motor vehicle dealerships and asserts a security interest in intellectual property owned by IP. NLM II leases real property located in Franklin Park, Illinois for the operation of its auto dealership and MB claims a security interest in the property and the monthly lease payments pursuant to a mortgage and assignment of rents. GMAC and MB (hereinafter collectively referred to as "Movants") request that these cases be transferred to the United States Bankruptcy Court for the Northern District of Illinois. A debtor entity may commence its bankruptcy case in the district in which the principal place of business or principal assets in the United States that is subject to such case have been located for the 180 days immediately preceding such commencement or in which there is a pending case concerning an entity's affiliate. 28

U.S.C. § 1408, *et seq*.  Movants claim that Houston is not the principal place of business or the location of the principal assets of Debtors.  Movants further contend that even if the cases are technically filed in the proper district, these cases should be transferred as the transfer would be in the interest of justice or for the convenience of the parties.  *See* 28 U.S.C. § 1412 and Fed.R.Bankr.P. 1014(a)(1).

Kevin Whalen, who resides in Houston, is the President and Manager of all of the Debtors and he testified that he is familiar with the operations of all the Debtors.  NLM, headquartered in Houston, is the owner and parent company of the other four affiliate Debtors.  Docket Nos. 3 and 6.  Whalen testified that all of the Debtors are managed from Houston and the nexus of the operations for all Debtors are in Houston.  Although certain operational decisions are made by each dealership entity at their physical locations, Whalen testified that the strategic decisions for all Debtors are made in Houston.

The court finds that venue in the Southern District of Texas is proper for all Debtors.  Venue is proper if a bankruptcy case is commenced in the district in which the principal place of business or principal assets have been located for the 180 days immediately preceding such commencement. Houston is the principal place of business of NLM as it is the location where Whalen, NLM's

3

President and Manager, directs, controls, and coordinates its activities.  Venue is also proper for the affiliate Debtors as each may commence its bankruptcy case in the district in which there is a pending case concerning an entity's affiliate.  Debtors are affiliates as NLM owns, controls or holds (with power to vote) 20 percent or more of the outstanding voting securities of the other four Debtors.  11 U.S.C. § 101(2).

Movants urge that transfer of these cases to the Northern District of Illinois would be in the interest of justice or for the convenience of the parties.  Movants claim that most of the bookkeeping and accounting work for the three motor vehicle dealership Debtors is conducted and maintained at the premises in the Chicago area, which also holds the largest number of vehicles among the dealership Debtors.  Movants also claim that a majority of the creditors for the three dealership Debtors are located in the Chicago area and that GMAC, the largest creditor of the estate, handles a significant part of the administration of the account of the Debtors from its offices in the Chicago area.

Whalen testified that the major investors of the parent company, NLM, and those investors' counsel, are located in Houston.  He also testified that the corporate counsel for the Debtors resides in Houston and the corporate books and records of the Debtors are kept in Houston by Debtors' corporate counsel.  None of the Debtors own any real property.  The physical premises upon which the three dealerships operate are leased.  Although each of

4

the three dealership Debtors maintain its own books and accounting records, the information from all locations is available electronically.  Testimony of Fred C. Caruso, Development Specialists, Inc.  Debtors' creditors are located in at least 16 different states.[1]  GMAC Exhibit Nos. 12, 14, 16, and 18.  GMAC's headquarters is located in Detroit, Michigan but it has offices nationwide.  Testimony of Douglas Diemer, GMAC Operations Manager, Orland Park, Illinois.  The documents evidencing GMAC's security interests in Debtors' assets include the signatures of GMAC representatives and Debtors' representatives and reflect that documents were executed in Illinois, Nevada, California, Colorado, and Texas.  The contract documents vary in their statement of governing law, and in some instances that election is left blank.  GMAC Exhibit Nos. 1-9; Exhibits attached to Docket No. 58.

The evidence submitted by GMAC does not establish advantages (in the Northern District of Illinois) or obstacles (in the Southern District of Texas) that would affect the attendance of witnesses or the conduct of these proceedings in Houston.  There is relative ease of access in Houston to sources of proof since all records of the three dealership Debtors are available electronically and the corporate records of all Debtors are located

---

[1] The deadline for filing schedules and the Statement of Financial Affairs (SOFA) was extended to March 2, 2010.  Through March 3, 2010, no schedules or SOFA are shown on the docket sheet as having been filed.  Thus, the court reviewed the "Numbered Listing of Creditors" filed by Debtors in each case to determine this information.  The court notes that the listings included other creditors whose addresses or locations were not identified.

in Houston.  GMAC has not shown that the economic and efficient administration of these estates would be promoted by transferring the cases to the Northern District of Illinois.  The court finds that GMAC has not demonstrated that good cause exists for a transfer of these cases  to the Northern District of Illinois, either for the convenience of the parties or in the interest of justice.

## Conclusions of Law

A case under Title 11 may be commenced in the district court for the district "in which the domicile, residence, principal place of business in the United States, principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty (180) days immediately preceding such commencement, or for a longer portion of such one hundred and eighty day period than the domicile, residence, or principal place of business, in the United States, or prime assets in the United States, of such person were located in any other district...." 28 U.S.C. § 1408.  The phrase "principal place of business" refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities. i.e., its "nerve center," which will typically be found at its corporate headquarters. *See Hertz Corp. v. Friend et al.*, 559 U.S. ____ (2010), Slip Opinion, No. 08-1107 (S.Ct. 2010).[2]

---

[2] While this case addresses determination of diversity jurisdiction, the Supreme Court's discussion of the history and application of the phrase

Regardless of whether venue has been filed in an improper or proper district pursuant to section 1408, on timely motion of a party in interest and after hearing on notice to the petitioners and other entities as directed by the court, the court, in its discretion, may transfer the case to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.  28 U.S.C. § 1412;  Bankruptcy Rule 1014(a).

There is no litmus test or set of hard and fast rules that offer precise guidance for transfer of venue, and the bankruptcy courts are left to a case-by-case determination based upon all relevant factors.  *See In re Pinehaven Assoc.*, 132 B.R. 982, 988 (Bankr. E.D.N.Y. 1991).  The criteria for determining the convenience of the parties are: proximity of creditors and debtor to the court; proximity of witnesses necessary to the administration of the estate; location of assets; economic and efficient administration of the estate; probability that a liquidation may be ordered in a case where the principal asset is real property; relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; enforceability of judgment, if obtained; relative

---

"principal place of business" is informative for venue purposes.  The Supreme Court stated that it returned to the "nerve center" approach in an effort to find a single, more uniform interpretation of the statutory phrase.

advantages and obstacles to a fair trial; local interest in having localized controversies decided at home; familiarity of the forum with the law that will govern the case; and avoidance of unnecessary problems of conflict of laws.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008); *In re Almeida*, 37 B.R. 186 (E.D. Pa. 1984); *In re Old Delmar Corp.*, 45 B.R. 883 (S.D.N.Y. 1985); *Matter of Commonwealth Oil*, 596 F.2d 1239 (5th Cir. 1979).

The debtor's choice of forum, while not an enumerated factor to consider, is given weight by placing the evidentiary burden on the party moving for transfer.  The burden of proof, either that venue is improper, or that transfer is in the interest of justice or for the convenience of the parties is by a preponderance of the evidence. Movant must establish "good cause" by demonstrating that a transfer is for the convenience of the parties or in the interest of justice.  Thus, when the transferee venue is not clearly more convenient than the venue chosen by the debtor, the debtor's choice should be respected.  *In re Volkswagen of America,* 545 F.3d 304, 314 (5th Cir. 2008); *Pinehaven*, 132 B.R. at 987.

SIGNED at Houston, Texas on this 4th day of March, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE